**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AMERICAN INTER-FIDELITY CORP., ) <br> an Indiana Corporation, an Attorney ) <br> In fact for AMERICAN INTER-FIDELITY ) <br> EXCHANGE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> M.L. SULLIVAN INSURANCE AGENCY, ) <br> INC., a/k/a Sullivan & Associates-Insurance ) <br> and Risk Management and a/k/a ) <br> Transportation Solutions, Inc., and ) <br> JOHN DOE, INC. #1 through #100, ) <br> ) <br> Defendants. ) | No. 15 C 4545 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiff American Inter-Fidelity Corp, an Indiana corporation, as attorney in fact for American Inter-Fidelity Exchange ("Plaintiff" or "AIFE"), has sued Defendant M.L. Sullivan Insurance Agency, Inc. [a/k/a Sullivan & Associates-Insurance and Risk Management a/k/a Transportation Insurance Solutions, Inc.] ("Sullivan"), an Illinois corporation, and some of Sullivan's employees and agents, including Sebastian Miklowicz and unidentified others referred to as John Doe, Inc. #1 through #100. Plaintiff is a reciprocal insurance company[1] that provides insurance for trucking and other interstate transportation enterprises ("carriers"), among other businesses and individuals. Sullivan provides insurance and risk management services and acts as an insurance broker for many of the carriers Plaintiff insures. According to Plaintiff, Sullivan provided false information to Plaintiff about carriers that Plaintiff insured. As described below, Plaintiff's allegations are at odds with the claims it has made in briefing, but as the court understands the case, Plaintiff contends that Sullivan underreported the risk Plaintiff had taken

---

[1] A reciprocal insurance company or exchange is an unincorporated business organization whose participants or members are both insurers and insureds.

on, as part of a scheme to capture a portion of the premiums the carriers paid for the insurance Plaintiff provided. Plaintiff alleges that Miklowicz and other employees and agents of Sullivan played a role in the scheme by directly providing the false information to Plaintiff. Plaintiff's second amended complaint ("SAC") asserts claims against all Defendants for violating the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2 ("Illinois Consumer Fraud Act" or "ICFA") (count I); against Sullivan individually for breach of contract (count II), conversion (count III), breach of fiduciary duty (count IV), constructive trust (count V), unjust enrichment (count VI), negligent misrepresentation (count VI [sic]), and negligent supervision (count VII [sic]); and against Miklowicz individually for fraud (count VIII [sic]) and constructive trust (count IX [sic]).[2]

Sullivan filed a motion [40] to dismiss the ICFA, breach of contract, and conversion claims (counts I through III), as well as the claim for negligent misrepresentation (count VI [sic]). Miklowicz has joined [48] Sullivan's motion with respect to the ICFA claim.[3] For the reasons discussed below, the motion is granted.

## BACKGROUND

Plaintiff alleges that it entered into a "business relationship" with Sullivan wherein Plaintiff would provide insurance to the carriers Sullivan represented. (SAC [33] ¶ 17.) As part of this relationship, Sullivan collected information from individual carriers related to their insurance needs, such as each carrier's total number of power units (tractors or individual trucks) and the number of miles driven for each power unit. (*Id.* ¶ 19.) Sullivan would then submit this information to Plaintiff, who would rely on it to calculate the proper level of insurance

---

[2] The SAC identifies two counts as "Count VI." The seventh, eighth, ninth, and tenth counts are thus labeled as counts six, seven, eight, nine, and ten, respectively. The court refers to the counts by the labels provided in the SAC.

[3] Because Miklowicz has already answered count I of the SAC, the court will treat the motion to dismiss as a motion for judgment on the pleadings with respect to the claim against him, pursuant to Federal Rule of Civil Procedure 12(c). *See Forseth v. Vill. of Sussex*, 199 F.3d 363, 367 n.5 (7th Cir. 2000).

coverage for each carrier and to set the appropriate premium rates. (*Id.* ¶¶ 20–22.) Plaintiff would issue the "necessary and proper insurance coverage" to each individual carrier, but it would issue the invoice for the insurance premiums to Sullivan, who paid the premiums on behalf of the carriers. (*Id.* ¶¶ 21, 23, 26.)

According to Plaintiff, the information Sullivan submitted about the carriers was inaccurate. Specifically, Plaintiff alleges that Sullivan underreported the number of power units and miles driven for each carrier, and as a result, Plaintiff recovered a lower premium than the full coverage for the carriers should cost. (*Id.* ¶¶ 24, 32.) In addition, Plaintiff asserts that while paying out the reduced premiums to Plaintiff based on the lower numbers Sullivan reported, Sullivan simultaneously collected from the carriers the higher premiums commensurate with the carriers' actual information and insurance needs.[4] (*Id.* ¶ 27.) Thus, according to Plaintiff, the carriers paid Sullivan more for their insurance premiums than Sullivan paid to Plaintiff, while the carriers received less insurance coverage from Plaintiff than they had requested or for which they had paid Sullivan. (*Id.* ¶¶ 28, 32.) As more fully explained below, in its current form, the SAC alleges a fraud scheme in which the carriers, but not Plaintiff itself, were victims. Specifically, the SAC alleges that Plaintiff received less than the full amount of the premiums the carriers were willing to pay it—but not less than the premium appropriate for the coverage level actually provided. It was the carriers who received less coverage than they requested and overpaid for the coverage they received, while Sullivan retained an undeserved portion of the premiums. Plaintiff also alleges that Sullivan would "kick back" a portion of the retained premium payments to some of the carriers or their representatives in order to further the scheme and to keep it hidden from other carriers and from Plaintiff.[5] (*Id.* ¶ 33.)

---

[4] Though not expressly alleged in the SAC, it is implied that Sullivan could calculate what the carriers' premiums would have been had Sullivan provided accurate information by examining the premium invoices Plaintiff issued to see how Plaintiff used the allegedly inaccurate information it had to set premiums. (SAC ¶¶ 23, 27.)

3

Plaintiff alleges that Miklowicz and other Sullivan employees or agents assisted Sullivan in carrying out its scheme by, among other things, obtaining information from the carriers and transmitting it (inaccurately) to Plaintiff, paying a lower premium to Plaintiff while charging the higher premium to the carriers, and sharing or kicking back a portion of the retained premium to certain carriers. In addition to providing a general outline of Defendants' scheme in the SAC, Plaintiff attaches an example of an allegedly inaccurate insurance application that Miklowicz submitted to Plaintiff on behalf of a particular carrier. (*See* Ex. 2 to SAC [33-2].) On the application, which Miklowicz allegedly signed as "AGENT of Applicant,"[6] Miklowicz is listed as the producer and contact name for the corporate applicant Brite Logistics, Inc. (*Id.*) The application represents that Brite Logistics had 46 power units in its current coverage period (October 2013 through October 2014) and was projected to have 57 units over the course of the proposed coverage period (October 19, 2014 through October 19, 2015). (*Id.*) According to the United States Department of Transportation Federal Motor Carrier Safety Administration Safety and Fitness Electronic Records ("USDOT SAFER") System, however, Brite Logistics actually had a total of 89 current power units as of September 14, 2014. (*See* Ex. 1 to SAC [33-1].) The signature page of the application provides that the signee certifies that:

> the information contained in [the] application is true and agree[s] that a misrepresentation of any of the facts by [the signee] will constitute a reason for [Plaintiff] to void or cancel any policy issued on the basis of [the] application and will hold [Plaintiff] harmless for the action taken. [The signee] also agree[s] that if a policy is issued pursuant to [the] application, the application and any elections or rejections, which are included with the application and signed by [the signee], may be relied upon by [Plaintiff] as accurate and shall become part of the policy.

(Ex. 2 to SAC.)

Sullivan has moved to dismiss Plaintiff's claims for breach of contract (count II), conversion (count III), and negligent misrepresentation (count VI [sic]). Sullivan has also moved

---

[5] Plaintiff does not provide any additional detail about how the "kick back" portion of the scheme operated.

[6] The signature itself is illegible.

to dismiss Plaintiff's claim under the ICFA (count I), and Miklowicz has joined Sullivan's motion with respect to that claim. Sullivan and Miklowicz argue that the ICFA claim fails because Plaintiff has not alleged the circumstances of fraud with adequate particularity and because Plaintiff is not a protected consumer under the ICFA. With respect to the breach of contract claim, Sullivan contends that that claim fails because Plaintiff has not alleged the existence and terms of the contract Plaintiff seeks to enforce. Plaintiff's conversion claim fails as well, according to Sullivan, because Plaintiff's allegations do not demonstrate that its rights to the alleged withheld premiums are superior to the carriers' rights. Finally, Sullivan argues that Plaintiff cannot state a claim for negligent misrepresentation because Sullivan was not in the business of supplying information.

## DISCUSSION

Both Sullivan and Miklowicz have moved to dismiss, but because Miklowicz has answered one of the challenged counts, the court treats that motion as one for judgment on the pleadings. "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). To survive either motion, a complaint must be "facially plausible," meaning the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the pleading stage, a court accepts all factual allegations as true and views them in the light most favorable to the plaintiff, but a court need not accept the truth of legal conclusions or threadbare recitals of a cause of action. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). In addition to the allegations included in the complaint, the court may consider documents attached to the pleadings without converting the motion into one for summary judgment. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012). Any claims that sound in fraud must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b),

5

under which a plaintiff must state the circumstances constituting the fraud with particularity. Ordinarily, Rule 9(b) requires the plaintiff to describe the "who, what, when, where, and how of the fraud," though the information required "may vary on the facts of a given case." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011).

The court will discuss Sullivan and Miklowicz's arguments for dismissal of Plaintiff's ICFA claim (count I), before turning to Sullivan's arguments for dismissal of the breach of contract (count II), conversion (count III), and negligent misrepresentation (count VI [sic]) claims.

I. **Illinois Consumer Fraud Act**

To state a claim under the ICFA, "a plaintiff must show: (1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (internal quotation marks omitted). An ICFA claim sounds in fraud, and thus Rule 9(b)'s heightened pleading requirements apply. *Id.* at 737.

If the plaintiff asserting a claim under the ICFA is a private party, the plaintiff must show that the defendant's violation of the act caused the plaintiff to suffer "actual damage." 815 ILCS 606/10a. That is, the private plaintiff's allegations must demonstrate that it suffered "actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citing *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 888 N.E.2d 1190, 1197 (1st Dist. 2008)). In addition, because the ICFA is a consumer protection statute, a non-consumer like Plaintiff may only state a claim under the ICFA by alleging a "consumer nexus" with the defendants' alleged conduct. *See Blankenship v. Pushpin Holdings*, LLC, No. 14 C 6636, 2015 WL 5895416, at *9 (N.D. Ill. Oct. 6, 2015). To meet the consumer nexus test, non-consumer plaintiffs must plead "(1) that their actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations . . . concerned consumers other than themselves; (3) how

6

defendant's particular [conduct] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 298 Ill. App. 3d 146, 160, 698 N.E.2d 257, 269 (2d Dist. 1998). In other words, in determining whether the consumer nexus test has been met, the court must ask whether the defendant's alleged conduct involves "trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Roppo v. Travelers Companies*, 100 F. Supp. 3d 636, 651 (N.D. Ill. 2015) (quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.,* 190 Ill. App. 3d 524, 546 N.E.2d 33, 41 (2d Dist. 1989)).

Defendants argue that Plaintiff has failed to plead its claim under the ICFA with the specificity required by Rule 9(b). In particular, they fault Plaintiff for failing to identify the specific individual who received the false information from Sullivan and Miklowicz, the time when the misrepresentation was provided, how it was communicated, and the actual statements that were allegedly false. In addition, they point out that Plaintiff's allegations concerning the premiums they collected from the carriers (as well as the alleged kickbacks) are based solely on "information and belief," which they argue runs afoul of Rule 9(b)'s particularity requirement. *See Camasta*, 761 F.3d at 738 ("[A] plaintiff alleging fraud does not have unlimited leeway in satisfying the particularity requirement of Rule 9(b) when the circumstances are pleaded solely on information and belief.") (internal quotation marks omitted).

In the court's view, Plaintiff's allegations are sufficiently specific. The SAC provides a clear general outline of the Defendants' alleged scheme as well as the scheme's general time period, which puts Defendants on adequate notice of the claims asserted against them. The insurance application attached to the SAC offers a detailed representative example of the alleged misrepresentations. *See Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730, 735 (N.D. Ill. 2010) ("A plaintiff who pleads a fraudulent scheme involving numerous transactions over a period of years need not plead specifics with respect to every instance of fraud, but he must at least provide representative examples."). Specifically, that application identifies the person who

7

made the misrepresentations (Miklowicz), the method of communication (the application), and the actual false representations (unit numbers that contradict the numbers reported in the USDOT SAFER System). Given the complex nature of the alleged scheme and the fact that information about the premiums Sullivan collected is unlikely to be in Plaintiff's possession, the court concludes that Plaintiff's allegations are sufficient to satisfy Rule 9(b)'s requirements.

Defendants also attack Plaintiff's failure to allege that Sullivan had actual knowledge of the misleading character of the information it provided. False or misleading information communicated by insurance producers is not actionable under the ICFA unless the insurance producer has "actual knowledge of the false, misleading, or deceptive character of the information." *See* 815 ILCS 505/10b(6). But Plaintiff has sufficiently alleged facts from which one can infer that Sullivan and its agents knew that they were submitting false information. Knowledge and other conditions of a person's mind may be alleged generally. FED. R. CIV. P. 9(b). The SAC's allegations that Defendants collected information from the carriers and then provided different information to Plaintiff as part of a fraudulent scheme are sufficient at this stage to permit the inference that Sullivan had actual knowledge that the information it submitted was misleading.

Though Plaintiff's allegations are adequately specific, the court concludes that Plaintiff's ICFA claim fails for a different reason. As Defendants assert, the facts alleged in the SAC show that Plaintiff did not suffer "actual damages" as a result of Defendants' alleged conduct. In the SAC, for example, Plaintiff alleges that it used the information Sullivan submitted to determine the "proper level of insurance coverage," which was actually "an amount less-than [sic] that requested, paid and promised" because the information Sullivan submitted was inaccurate. (SAC ¶¶ 22, 31–32.) The fee or premium Plaintiff charged was the premium "for such insurance coverage" based, again, on the information Sullivan submitted. (*Id.* ¶¶ 21–22.) Thus, as Defendants explain, the carriers may have been harmed because they paid for more coverage than they received, but from the SAC, it appears that Plaintiff charged a premium (paid by

Sullivan) corresponding to the level of coverage it provided. There is no allegation, as Defendants note, that Sullivan underpaid Plaintiff for the coverage it actually provided.

In response to this argument, Plaintiff presents a version of events at odds with the allegations in the SAC. The SAC states expressly that Plaintiff used the information Sullivan submitted to determine the "proper level of insurance coverage" and that Plaintiff ultimately issued an amount of insurance that was less than what the carriers requested (meaning that the carriers, but not Plaintiff, were cheated). In its response to the motion to dismiss, however, Plaintiff dismisses the notion that the amount of coverage it furnishes is a function of the premium paid. It asserts that "Plaintiff either provides coverage or it does not provide coverage – it does not provide a 'different level of coverage' depending on the level of risk." (Pl.'s Resp. at 13.) Thus, Plaintiff argues, the carriers "received what they paid for" while Plaintiff was underpaid for the coverage it provided based on the carriers' true risk level. (*Id.*) Because this assertion appears to be flatly inconsistent with the SAC, the court will not consider it. *Cf. Bryant v. Gardner*, 545 F. Supp. 2d 791, 801 n.2 (N.D. Ill. 2008) ("The Court can consider additional factual assertions made in response to a motion to dismiss as long *as they do not conflict with the complaint*.") (emphasis added) (citing *Albiero v. Kankakee*, 233 F.3d 417, 419 (7th Cir. 1997)). The court thus concludes that Plaintiff has not alleged that it suffered "actual pecuniary losses" as a result of Defendant's conduct, and it has therefore failed to state a claim under the ICFA. *Kim*, 598 F.3d at 365.

Significantly, under the version of facts Plaintiff now espouses, the ICFA claim fails for a different reason, as well. If it is true that Plaintiff suffered an injury while the carriers "received what they paid for," Plaintiff would fail the ICFA's consumer nexus test. That is, if Defendants' conduct only caused Plaintiff (an insurer) to lose premiums it was owed while the consumer carriers were fully insured by coverage for which they paid the appropriate premium rate, it is difficult to see how Defendants' alleged conduct "implicates consumer protection concerns." *Roppo*, 100 F. Supp. 3d at 651. The court concludes that Plaintiff's ICFA claim fails even if the

9

court accepted the facts asserted in its response because Plaintiff would be unable to satisfy the consumer nexus test.

## II. Breach of Contract

Plaintiff asserts that Sullivan breached its contract with Plaintiff by submitting false information and by paying Plaintiff less than the full premium amount it received from the insured carriers. Defendants contend that Plaintiff has failed to allege sufficient facts demonstrating that Plaintiff and Sullivan had a contractual relationship. In particular, they argue that the SAC's allegations are inadequate to determine the terms of any such contract, the existence of consideration for the agreement, or the satisfaction of any conditions precedent. Certainly Plaintiff has alleged that it and Sullivan entered into some "business relationship" (SAC ¶ 17), but the court agrees with Sullivan that the SAC is bereft of allegations demonstrating that the relationship was a contractual one. Plaintiff insists that the SAC outlines a contractual relationship, under which Sullivan would prepare, execute, and submit insurance applications to Plaintiff in exchange for insurance coverage for Sullivan's customers. Sullivan's payment of the premium invoice Plaintiff issued constituted consideration for their agreement, Plaintiff contends. In addition, Plaintiff points to the insurance application attached to the SAC, which Miklowicz signed and which provided that the signee certified the accuracy of the information submitted.

Plaintiff does not identify anything in the complaint, however, to demonstrate that *Sullivan* made a promise to *Plaintiff*, supported by consideration,[7] that it would submit accurate information and would remit the full amount of the premiums paid by the carriers. The court presumes that Sullivan did indeed have such obligations, but the SAC does not establish that a

---

[7] Sullivan's payment of the carriers' premium invoice is a detriment to *Sullivan* and thus cannot serve as consideration for any promise Sullivan allegedly made. *See LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011) (citing *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 830 N.E.2d 619, 624 (1st Dist. 2005)) ("Consideration is defined as a bargained-for exchange whereby the promisor receives some benefit or the promisee suffers detriment.")

contract between Plaintiff and Sullivan was their source. The face of the insurance application attached to the SAC makes clear that to the extent the application was an offer to enter into a contract, the resulting contract would be between Plaintiff (the insurer) and the carrier (the insured). Above the line where Miklowicz allegedly signed his name, the application reads "Signature of AGENT of Applicant." (Ex. 2 to SAC at 10.) This document may show that Sullivan, acting through Miklowicz, was an agent for the carrier in its contractual relationship with Plaintiff. But Illinois law is clear that "the *only* way that an agent may be liable under a principal's contract with a third party is if the agent agrees to become personally liable." *Ramirez v. Chicago Jackson Currency Exch., Inc.*, 2015 IL App (1st) 150389-U, ¶ 21 (emphasis in original) (citing *Gateway Erectors Div. of Imoco-Gateway Corp. v. Lutheran Gen. Hosp.*, 102 Ill. App. 3d 300, 303, 430 N.E.2d 20, 23 (1st Dist. 1981)). The SAC contains no allegation that Sullivan made any such agreement. Based on the allegations in the complaint, therefore, the court cannot conclude that Plaintiff and Sullivan were parties to any contractual relationship that Sullivan breached, and Plaintiff's breach of contract claim must be dismissed.

### III.     Conversion

To state a claim for conversion under Illinois law, a plaintiff must allege that (1) defendant wrongfully assumed control, dominion or ownership over the plaintiff's property, (2) plaintiff had a right in the property, (3) plaintiff had an absolute and unconditional right to immediate possession of the property, and (4) plaintiff made a demand for possession of the property. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 614 (7th Cir. 2013) (citing *Gen. Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 886, 565 N.E.2d 93, 96–97 (1st Dist. 1990)). Defendants contend that Plaintiff's allegations are inadequate to support a claim for conversion for two reasons. First, they note that the SAC contains no allegation that Plaintiff made a demand to Sullivan for the allegedly converted property. Second, they argue that Plaintiff's assertion that its right to the property is superior to that of any other entity, including the carriers, is belied by its allegation that the carriers received insurance coverage in an amount less than

11

they requested. If the carriers paid for more coverage than they received, Defendants suggest, their right to the portion of the premiums Sullivan allegedly retained is at least as great as Plaintiff's.

Plaintiff does not dispute the absence of any allegation of a demand. Instead, Plaintiff contends it need not allege "each and every element" of its conversion claim because its allegations are sufficient to provide Sullivan with notice of the claim being asserted. (Pl.'s Resp. at 11.) Plaintiff points to *J & J Sports Productions, Inc. v. Ward*, No. 10-CV-193-JPG, 2010 WL 4781140, at *3 (S.D. Ill. Nov. 17, 2010), in which another district court ruled that a plaintiff's failure to allege a demand for return of the property was not fatal to its claim that the defendants' unauthorized broadcast of the plaintiff's television broadcast constituted conversion. In *J & J Sports*, however, the court concluded that demand is not a necessary element in cases where a defendant commits another independent action of conversion or where demand would be futile. *Id.* Because the defendants' broadcast of the program could be considered an independent action of conversion and because a demand to the defendants would have been futile once the broadcast was complete, the court concluded that demand was not a necessary element for the plaintiff's conversion claim. *Id.* Nothing in the SAC supports Plaintiff's suggestion that a demand would be similarly futile in this case. Demand is considered futile where "the defendant has sold or otherwise disposed of the property in question and thus no longer has possession thereof." *A.T. Kearney, Inc. v. INCA Int'l, Inc.*, 132 Ill. App. 3d 655, 664, 477 N.E.2d 1326, 1334 (1st Dist. 1985). Plaintiff has not alleged that Sullivan has disposed of the portion of the premiums it allegedly retained or that it would be otherwise unable to remit that portion to Plaintiff if required to do so. In the only other case Plaintiff cites in support of its futility argument, for example, the defendant employer had told its employee that the stock options it had allegedly converted were "gone." *Swift v. DeliverCareRx, Inc.*, No. 14 C 03974, 2015 WL 3897046, at *7 (N.D. Ill. June 23, 2015). The court is thus not convinced that Plaintiff's

requirement to allege a demand is excused because any such demand would be futile.[8]

To the extent Plaintiff believes it is unnecessary in general to allege a demand to state a claim for conversion, this court disagrees. In a case subsequent to *J & J Sports*, the Seventh Circuit stated that a proper complaint in Illinois must allege a demand for possession of the property and listed the plaintiff's failure to allege that she made a demand for possession among the many "problems with [the plaintiff's] conversion claim." *Cohen*, 735 F.3d at 614–15. Plaintiff's failure to allege that it made a demand to Sullivan thus requires dismissal of its conversion claim. *See United States ex rel. McCarthy v. Marathon Techs., Inc.*, No. 11-CV-7071, 2015 WL 1868144, at *4 (N.D. Ill. Apr. 22, 2015) (relying on *Cohen* and dismissing plaintiff's conversion claim for failing to allege facts suggesting demand).

Failure to allege facts to satisfy the demand element is reason enough to dismiss Plaintiff's conversion claim. In addition, the court notes again that in responding to Defendants' second argument, Plaintiff's characterization of the insurance coverage it provided to the carriers appears to be inconsistent with the complaint. Should Plaintiff seek to include a conversion claim in a future amended complaint, in addition to addressing the demand element, Plaintiff will need to clarify whether the carriers received the level of insurance coverage for which they paid and thus whether Plaintiff had an "absolute and unconditional right" to the allegedly converted property as against the rights of the carriers.[9]

---

[8] Plaintiff also suggests that the court can infer the futility of a demand because Sullivan failed to turn over the property to Plaintiff in response to this lawsuit. As Defendants note, however, Plaintiff cites no case law to support the proposition that filing a lawsuit constitutes a demand or that a defendant's response to a lawsuit can demonstrate futility, and adopting such a proposition would essentially make the demand element redundant. (*See* Defs.' Reply [51] at 7.)

[9] The court notes one additional concern with Plaintiff's conversion claim, namely that money may only be the subject of such a claim under certain circumstances. Though Defendants do not press this argument, the court is not confident that Plaintiff's allegations satisfy the Illinois Supreme Court's requirements for conversion of money claims. *See In re Thebus*, 108 Ill. 2d 255, 261, 483 N.E.2d 1258, 1261 (1985). Specifically, it is not clear from Plaintiff's allegations that the premiums Sullivan withheld constituted a "specified identifiable fund," which "at all times belonged to the plaintiff." *Id.* at 261–62, 483 N.E.2d at 1261.

## IV. Negligent Misrepresentation

Defendants argue that the "economic loss" or *Moorman* doctrine bars Plaintiff's claim for negligent misrepresentation. Under Illinois law, plaintiffs generally may not assert tort claims where they seek to recover only economic losses, though this general rule is subject to certain exceptions. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 88–89, 435 N.E.2d 443, 452 (1982). One such exception allows a plaintiff to recover economic losses "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Id.* at 89, 435 N.E.2d at 452. Thus *Moorman* will not bar a plaintiff's claim for negligent misrepresentation if the plaintiff adequately alleges that "(1) defendant is in the business of supplying information for the guidance of others in their business dealings; (2) defendant provided information that constitutes a misrepresentation; and (3) defendant supplied the information for guidance in the plaintiff's business dealings." *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 27, 719 N.E.2d 288, 296 (1st Dist. 1999). If the defendant supplied information that was merely "ancillary to the sale of a product or service or in connection with the sale," the defendant will not be considered to be in the business of providing information and cannot be liable for negligent misrepresentation. *Id.* at 28, 719 N.E.2d at 296; *see also First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 355 Ill. App. 3d 546, 558, 823 N.E.2d 168, 179 (1st Dist. 2005), *aff'd,* 218 Ill. 2d 326, 843 N.E.2d 327 (2006) (information relating to "noninformational goods or services" considered "merely ancillary or incidental").

Defendants argue that because Sullivan is actually in the business of providing insurance to its clients, the "fact-based information" it relayed to Plaintiff to procure insurance for the carriers was merely "incidental or ancillary" to the services (that is, the insurance) it provides. (Defs.' Mem. [33] at 9.) Plaintiff challenges this characterization of the information Sullivan submitted. That information was "material" rather than incidental, Plaintiff argues, because Sullivan had a contractual obligation (arising from each insurance application) to

14

submit accurate information upon which Plaintiff could rely. (Pl.'s Resp. [49] at 14.) Plaintiff also notes that Sullivan was not simply "relaying" information, as the complaint expressly alleges that the information Sullivan supplied was different from the information the carriers had provided. (*Id.*) But the "materiality" or accuracy of the information Sullivan provided is irrelevant to the central question of what type of business Sullivan is—does Sullivan provide information to guide others like Plaintiff in their business transactions, or is the information provided incidental to its actual business of procuring and providing insurance?

The court concludes that Sullivan is not in the business of providing information and that the *Moorman* doctrine therefore bars Plaintiff's negligent misrepresentation claim. Where Illinois courts have allowed negligent misrepresentation cases to proceed, the defendants in those cases have generally used their professional expertise to offer information in the form of advice or counseling that the plaintiffs use as a guide to conducting their business transactions. The types of defendants who have fallen under the exception to the *Moorman* doctrine include, for example, accountants, inspectors, title insurers, real estate brokers, stock brokers, and others whose businesses involve conducting an analysis or investigation before offering information or recommendations to third parties seeking their expertise. *See First Midwest Bank*, 355 Ill. App. 3d at 557–58, 823 N.E.2d at 178–79 (collecting cases). Thus in general if the information-provider conducts no independent analysis to generate the information it supplies and acts merely as an "informational conduit" between two parties, it does not qualify under the exception to *Moorman*. *Zahorik v. Smith Barney, Harris Upham & Co.*, 664 F. Supp. 309, 314 (N.D. Ill. 1987); *Keystone Consol. Indus. v. Conseco Med. Ins. Co.*, No. 02 C 0755, 2004 WL 785097, *4 (N.D. Ill. Apr. 12, 2004) (insurance broker providing information from employer of insureds to insurer "acted as a mere conduit of information" and did not fall under the exception to the *Moorman* doctrine). An assertion that a defendant is in the business of providing information for the guidance of others must be supported by more specific factual allegations. *First Midwest Bank*, 335 Ill. App. 3d at 559, 823 N.E.2d at 179. None of the allegations in Plaintiff's complaint

support a conclusion that Plaintiff received any "analytical work" from Sullivan, nor is there any other basis for characterizing Sullivan as being in the business of supplying information. *See id.* at 558, 823 N.E.2d at 179. Rather, the SAC's allegations indicate that to the extent Sullivan provided Plaintiff with information, it did so as a mere conduit, and such information was incidental to Sullivan's actual business of procuring insurance for the carriers. Plaintiff therefore cannot state a claim for negligent misrepresentation against Sullivan.[10]

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss [40] is granted without prejudice. Plaintiff is given leave to file an amended complaint, if it so wishes, within 21 days.

ENTER:

Dated: July 21, 2016

_____
REBECCA R. PALLMEYER
United States District Judge

---

[10] The court is aware, through its own research, that at least two of its colleagues have ruled that an insurance broker who provides information from the prospective insureds to an insurer is in the business of supplying information and can thus be liable for negligent misrepresentation. *See LM Ins. Corp. v. Fed Equities, Inc.*, No. 05 C 1154, 2008 WL 4378366, at *6 (N.D. Ill. Mar. 28, 2008); *Geneva Assur. Syndicate, Inc. v. Associated Agencies, Inc.*, No. 92 C 1652, 1999 WL 731788, at *4 (N.D. Ill. Aug. 30, 1999). For the reasons discussed above, the court disagrees that brokers acting as mere informational conduits would be excepted from the *Moorman* doctrine's scope. Should an amended complaint reveal that Sullivan in fact exercised discretion and offered advice concerning Plaintiff's decision to extend insurance coverage, the court may revisit this issue.